IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

MELVIN T. CARRINGTON                                               PLAINTIFF

V.                              CIV. NO. 09-1007

MICHAEL J. ASTRUE,
Commissioner of Social Security                                    DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Melvin T. Carrington, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration, (Commissioner) denying his claims for a period of disability and disability insurance benefits under Title II of the Social Security Act (the Act) and Supplemental Security Income under Title XVI of the Act. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**Procedural Background**

Plaintiff applied for disability insurance benefits and supplemental security income on December 4, 2006, alleging disability since October 15, 2005, due to being HIV positive. (Tr. 10, 49-53, 295-298). Plaintiff's applications were denied initially and on reconsideration. (Tr. 27, 31-33, 292-294, 299). Pursuant to Plaintiff's request, a hearing before an Administrative Law Judge (ALJ) was held on November 7, 2008, at which Plaintiff and a vocational expert (VE) testified. (Tr. 300-316). On November 26, 2008, the ALJ issued an unfavorable decision. (Tr. 7-21). The Appeals Council denied Plaintiff's request for review on January 23, 2009, and the decision of the ALJ therefore became the final decision of the Commissioner. (Tr. 2-4).

In his decision, the ALJ found that Plaintiff engaged in substantial gainful activity in 2005 and 2006, but had not engaged in substantial gainful activity since that time. The ALJ also found that Plaintiff suffered from the following severe impairments: HIV; Borderline Intellectual Functioning; Depressive Disorder NOS; and showed patterns similar to a person with Histrionic personality. (Tr. 12). The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments, and that Plaintiff had the Residual Functional Capacity (RFC) to perform medium work with certain limitations. (Tr. 14). The ALJ found that Plaintiff could not perform his past relevant work, but that there were jobs in the national economy that he would be able to perform, such as hand packager or shipper. (Tr. 20). Accordingly, the ALJ determined that Plaintiff was not disabled.

**Evidence Presented**

Plaintiff was born in 1986 and completed high school. He began working part-time at McDonald's while in high school, and planned on working there full time immediately after he graduated from high school. (Tr. 222). He worked at McDonald's in Magnolia, Arkansas and El Dorado, Arkansas in 2005 and 2006, cooking, taking orders and working as a cashier. (Tr. 303). In October of 2005, Plaintiff was diagnosed with Human Immunodeficiency Virus (HIV). (Tr. 264). On March 3, 2006, he was seen at the AHEC Family Medicine Clinic, and since Plaintiff's CD4 blood count was over 350, the doctor decided not to give Plaintiff medication for HIV at that time. (Tr. 264, 266).

On December 1, 2006, Plaintiff was again seen at the AHEC Family Medicine Clinic for a check-up, and stated that he was doing fairly well, without any new complaints. (Tr. 255). His HIV was found to be asymptomatic, but since the CD4 count was decreasing and the viral load was

increasing, he was started on medications. The doctor reported that there was a long conversation with Plaintiff regarding the importance of the adherence to the medications, the side effects of the medications were explained to Plaintiff, and Plaintiff was told to call the clinic if he experienced any side effects. (Tr. 256).

On January 5, 2007, Plaintiff reported to the UAMS Area Health Education Centers, (UAMS) where he had been sent for adjustment of the HIV medications. He had complained that the medication was making him feel ill, causing nausea and vomiting. (Tr. 274). At that time, Plaintiff denied having any other problems with the medications and had no other complaints. The record reflects, among other things, a denial of depression, anxiety, memory loss, mental disturbance, suicidal ideation, hallucinations, paranoia, back pain, joint pain, joint swelling, muscle cramps, muscle weakness, stiffness or arthritis. (Tr. 274). Dr. Scott Brown prescribed Phenergan as needed for nausea. (Tr. 276).

On February 7, 2007, Plaintiff was fired from his job at McDonald's, and Plaintiff contended that he became unable to work because he was sick and took off too many days of work. (Tr. 122). In a report dated June 6, 2007, Plaintiff stated that he suffered from unusual fatigue, requiring a four hour daily nap. He stated that he had sick spells, broke out in a sweat and felt light headed. (Tr. 95). He stated that he had pain in his stomach and head which lasted all day, off and on, and that he got tired quickly. (Tr. 95). He also stated that standing and moving around made his illness worse. Plaintiff was taking Sustiva and Truvada and reported that the Sustiva caused drowsiness and dizziness. (Tr.96). Plaintiff also reported that he got tired easily, got weak when standing and some times got lightheaded when walking. (Tr. 102).

On June 6, 2007, Plaintiff was seen at UAMS by Dr. Tracy Fite, complaining of HIV and

insomnia. Dr. Fite noted that he was on medications for his HIV, and "somewhat hesitantly states that he has not missed any doses." (Tr. 183). At that visit, Plaintiff was diagnosed with depression onset. (Tr. 184). Dr. Fite prescribed Lexapro and Ambien CR for sleep. (Tr. 184-185).

On June 9, 2007, Plaintiff presented to Wadley Regional Medical Center Emergency Room for a skin rash on the side of his neck, which was diagnosed as herpes zoster (commonly known as shingles). (Tr. 188). On June 19, 2007, Plaintiff presented to UAMS for a check up and follow up on his shingles. Plaintiff reported that the pain had been resolved. (Tr. 180). In an October 22, 2007 work history report, Plaintiff stated that he was taking Sustiva, Truvada, and Citalopram, all prescribed by Dr. Fite. (Tr. 84).

In a report dated February 12, 2008, Plaintiff reported that he suffered from unusual fatigue, required a two hour daily nap, and stated that he had sick spells everyday. (Tr. 66). He stated that walking and standing for long periods of time made his symptoms worse. (Tr. 67). Plaintiff again presented to UAMS on April 25, 2008, for a check up and complained of depression. (Tr. 168). On May 27, 2008, he complained to UAMS of a rash on the soles of his feet, and denied depression. (Tr. 163-164). Plaintiff was diagnosed with syphilis, early, symptomatic, secondary, skin, HIV disease. (Tr. 166).

On June 14, 2008, a Mental Diagnostic Evaluation and Intellectual Assessment was conducted by Dr. Julia M. Wood. (Tr. 223-229). Plaintiff's chief complaint was that he was HIV positive and was depressed and slept a lot. (Tr. 223). Plaintiff reported side effects of nausea, diarrhea, poor appetite, night sweats, and sleep problems. He indicated that his depression medication seemed to keep things under control, but only some of the time, and that the HIV medications seemed to be working. (Tr. 224). He also told Dr. Wood that he lost his job at

McDonald's in 2007 when he got into an argument about McDonald's not wanting him to work until he was on medication. (Tr. 225). He stated that since then, he had applied for jobs but could never keep them more than a few weeks because he had to call in sick from fatigue and from not being able to stand the heat. (Tr. 225). Dr. Wood noted that malingering was not expected, but that lack of effort by Plaintiff in some cases was apparent. (Tr. 227). Dr. Wood diagnosed Plaintiff with:

> Axis I - Depressive Disorder, NOS;
> Axis II - Histrionic Personality Disorder, Borderline Intellectual Functioning;
> Axis III - HIV positive (by claimant report);
> Axis IV - academic; and
> Axis V - 45/55/45/70 (current range/lowest estimated/highest estimated in the last year).

(Tr. 228).

On June 20, 2008, a Mental RFC Assessment was completed by Paula Lynch. (Tr. 244-247). She found that Plaintiff was not significantly limited in thirteen of twenty categories and was moderately limited in his:

> ability to understand and remember detailed instructions;
> ability to carry out detailed instructions;
> ability to maintain attention and concentration for extended periods;
> ability to make simple work-related decisions;
> ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
> ability to accept instructions and respond appropriately to criticism from supervisors; and
> ability to set realistic goals or make plans independently of others.

(Tr. 244). She further found that Plaintiff was able to perform work where the interpersonal contact was incidental to work performed, e.g. assembly work, and where complexity of tasks was learned and performed by rote, few variables, little judgment, and where supervision required was simple, direct, and concrete (unskilled). (Tr. 246).

On October 31, 2008, Plaintiff presented to UAMS, complaining that he was at work the

preceding week and felt like he was going to pass out. (Tr. 130). Dr. Andrea Lewis-Echols reported that Plaintiff's only other problem was severe depression, that Celexa was working but was too expensive. (Tr. 130). The doctor reported that they had explained that Celexa was generic and was currently on the $4 list. (Tr. 130). The report also indicated that Plaintiff denied, among other things, fevers, chills, sweats, anorexia, fatigue, malaise, weight loss, nausea, vomiting, diarrhea, constipation, change in bowel habits, abdominal pain, melena, hematochezia, jaundice, back pain, joint pain, joint swelling, muscle cramps, muscle weakness, stiffness and arthritis. (Tr. 131). In addition, the report indicated that Plaintiff's gait and station were normal, there was no clubbing, there was normal alignment and mobility in his head and neck, normal alignment and mobility and no deformity in his spine, ribs, or pelvis, and there was normal ROM and strength and no joint enlargement or tenderness in all of his extremities. (Tr. 132).

One week later, on November 7, 2008, Plaintiff testified at the hearing held before the ALJ. (Tr. 300-316). At the hearing, Plaintiff stated that his job at McDonald's ended because his legs and feet "and stuff" started to swell up. (Tr. 304). He stated that he worked in 2008 at a place he thought was called "At Your Service," but only stayed there for about a week because the same thing started to happen. (Tr. 304). He further stated that he took strong medication for his HIV and could not sleep and broke out in sweats. (Tr. 307). He testified that he did not have pain anywhere, was depressed and did not have any energy. (Tr. 308). He also said that he could not be in the heat too long or stand for long or he felt like he was about to pass out. (Tr. 309-310). At the time of the hearing, Plaintiff was taking Sustiva, Truvada and Celexa. (Tr. 311-312).

**Discussion**

The court is concerned that no Physical RFC Assessment was ever obtained by the ALJ to

indicate Plaintiff's functional capacity to work. Instead, in concluding that Plaintiff was able to perform medium unskilled work with restrictions, the ALJ relied upon the fact that Plaintiff failed to advise his medical care providers regarding his fatigue, swelling feet and inability to stand or sit for long periods of time without feeling like he would pass out. The ALJ concluded that Plaintiff would be able to lift/carry up to 50 pounds occasionally, and stand and/or walk for 6 hours in an 8 hour work day. Although Plaintiff may not have reported his fatigue or swelling feet to the UAMS, he did report such symptoms at various times. In a report dated February 12, 2008, he alleged that he suffered from unusual fatigue and had sick spells everyday. He also reported that he could not walk or stand for long periods of time, that he got sick and broke out in sweats and got dizzy. (Tr. 66-67). He reported to Dr. Wood on June 14, 2008, that he slept a lot, that he could not keep a job because he had to call in sick from fatigue and from not being able to stand the heat. (Tr. 223, 225). He also reported to UAMS on October 31, 2008, that he had previously been at work and felt like he was going to pass out. (Tr. 130). Finally, at the hearing, Plaintiff testified that he did not have any energy and that he could not stand for a long period of time or he would feel like he was about to pass out. (Tr. 309-310).

There was no medical evidence to contradict Plaintiff's complaint that he was not able to stand or walk for long periods of time before feeling as though he would pass out. The Eighth Circuit has consistently held that the ALJ must "fully and fairly develop the record so that a just determination of disability may be made." Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995). As in Frankl, absent some medical evidence of Plaintiff's RFC at the time of the hearing, the Secretary could not meet his burden to demonstrate that Plaintiff was capable of performing medium work, with certain limitations. In fact, in the ALJ's second hypothetical, he asked the VE to assume the

person could lift five pounds occasionally, sit four hours out of an eight-hour workday and stand and/or walk two hours. He further asked the VE to assume that this person did not have the ability to understand, carry out and remember instructions, use appropriate judgment in making work-related decisions, respond appropriately to supervision, and deal with routine work pressures or changes in a routine work setting, and that the individual could not complete the required tasks of a 40-hour, five-day week position. The VE stated that this person would not be able to perform Plaintiff's past relevant work or any other jobs that existed in the local, regional, or national economy. (Tr. 315). Thus, whether Plaintiff was capable of standing and/or walking for six hours out of an eight hour workday was clearly significant.

The court finds it appropriate to remand this matter to the ALJ to obtain a Physical RFC Assessment from an examining physician, and to thereafter to consider Plaintiff's RFC in light of the new Physical RFC Assessment.

**Conclusion**

Based upon the foregoing, the undersigned reverses the decision of the ALJ and remands this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).

IT IS SO ORDERED this 8th day of March, 2010.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE